[Civ. No. 17077.   Second Dist., Div. One.   Dec. 30, 1949.]

FRED C. CROW, Respondent, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Appellant.

Hugo A. Steinmeyer, G. L. Berrey and George L. Beckwith for Appellant.

Swaffield, Madden & McCarry for Respondent.

DORAN, J.—The appeal herein is from a judgment entered upon a verdict in favor of plaintiff, a depositor in the defendant bank, in the sum of $7,912.62, representing the amount of 43 checks signed with plaintiff's name by a bookkeeper, Virgil Fore, without plaintiff's authority.

It appears that plaintiff operated three cafés in Long Beach, and about the middle of January, 1946, employed Virgil Fore, aged 21 years, as bookkeeper. Prior to the forgeries of plaintiff's signatures on which the present action is predicated, Fore had raised the amount of certain paychecks, such conduct commencing shortly after employment, which evidence is relied upon by the appellant as "showing conclusively the negligence of plaintiff in failure to detect and report" to the bank such earlier activities. In raising these earlier checks, Fore's practice was to prepare blank checks for plaintiff's signature, leaving a space between the dollar mark and the first figure in the amount; the line in which the amount was to be written in words was left blank and later filled in with

a check writing machine. After plaintiff had signed the checks in that condition and bearing the correct amount in figures, Fore would then insert an additional figure immediately after the dollar sign, thus raising the amount from, say, $ 68.50 to $268.50, printing in the raised amount in words with the machine. The lower and correct amount, however, was entered on the check stub which therefore presented a normal appearance to anyone examining the checkbook. In all cases the fraudulent checks, whether of the earlier raised variety or of the later forged kind, were abstracted from the monthly bank statement by Fore as soon as same were received in the office, and immediately destroyed. At the trial, therefore, it was impossible to produce in evidence any of the forged checks involved in the present action. As before indicated, the present action is not predicated upon the earlier raised checks but upon checks bearing forged signatures.

It appears that Fore's first forgeries of Crow's signatures, committed in July, 1946, were effected by tracing plaintiff's genuine signatures; later the name was written freehand. The blank checks used were obtained from a spare checkbook and were therefore not numbered consecutively with the paychecks currently used. Fore caused Crow's books to appear in balance principally by the device of entering fictitious credits in the inventory account.

In June, 1946, Fore called the manager's attention to the absence of checks numbered 13291-13299 which should have been at the end of a checkbook. The manager, Juniel, thought "possibly the bank had not put them in when they made the books up," but went to the bank and stopped payments on the missing numbers. Fore had, in fact, abstracted the checks for use in forgeries, and reported the checks as missing, being about to leave on a "draft call," fearing that the loss of the checks might be discovered.

Finally, in June of 1947, while Fore was on vacation, Juniel, manager for plaintiff, discovered that a certain entry had not been made in the books. This resulted in an audit which lasted for six weeks, and exposed Fore's defalcations. Fore was arrested in the same month, and convicted of forgery.

■ It is contended in appellant's brief that the trial court "erred in admitting specimens of (Fore's) ability to forge the name of Crow, made out of court and under conditions not fairly simulating the conditions under which the actual forgeries were made." The plaintiff took the deposition of Fore in jail; Fore was handed pen and paper by plaintiff's

attorney and thereupon made three signatures with a genuine signature of Crow in view and three imitations of Crow's signature from memory. Fore testified at the trial, identified the signatures made in jail and the same were admitted in evidence.

Respondent answers this contention by calling attention to the fact that this was not "experimental evidence" admitted for the purpose "of evidencing a tendency, capacity, or quality of external *inanimate* nature," in which case a similarity of conditions is required; that here the evidence in question concerned only "the ability of Fore to forge Crow's signature." Respondent further notes that after the exhibit went into evidence, "the defendant adopted it and made use of it as his own," by inquiring of various bank officers and employees whether such a signature would be approved for payment, and having such witnesses point out differences from a genuine signature and that the signatures made in jail were "kind of shaky." Apropos this matter it may also be noted that, although none of the forged checks could be produced at the trial owing to Fore's destruction of the same, there was and is no doubt of the forgery and the forger testified in detail as to methods used in perpetrating the crime.

Appellant also argues that in respect to the alleged "experimental" evidence admitted, "The Court erred in refusing to instruct the jury on the necessity for a foundation of similar conditions"; that the errors complained of were "grossly prejudicial," for the reason that "The evidence shows conclusively that the plaintiff was guilty of negligence in failure to detect and notify the bank of the earlier forgeries." It is also insisted that "Plaintiff was guilty of negligence in employing Fore after actual knowledge that he was a thief"; that the trial court "erred in refusing to instruct the jury that the plaintiff was negligent"; and that "The preponderance of the evidence was that there was no negligence on the part of the bank."

On the other hand, respondent's brief avers that "The burden of proof was on defendant to show that it was free from negligence," and that the plaintiff was guilty of negligence which contributed to the payment of the forged checks; that "plaintiff was not guilty of negligence in continuing Fore in his employment after Fore had . . . plead guilty to petty theft for the taking of some fender pants after his own had been removed from his car," as contended by appel-

lant. Respondent insists that appellant is merely arguing the facts; that the same arguments were made in the trial court where the jury found against such contentions, for which reasons the judgment should be affirmed.

Appellant's conclusion is that, "As the defendant's evidence abundantly established, the plaintiff's gross negligence and the defendant's freedom from any negligence, except failure to detect the forgeries, if they were detectable by proper banking precautions, it must be said that, except for the admission of Exhibit 4 (specimens of Fore's ability to forge Crow's name), the verdict would probably have been in favor of the defendant," for which reason the judgment should be reversed. In this connection appellant insists that only "by indulging inferences based upon scintillas of evidence" could the jury have found for the plaintiff, and that "the competent evidence falls so far short of the quantum necessary to produce such a preponderance in favor of the verdict," that the error in admitting Exhibit 4 was prejudicial.

It seems evident from the above statements that appellant's basic contention is predicated upon the view that, from the evidence before it the jury arrived at a wrong conclusion. But, under the well established rule of appellate procedure, a verdict supported by some substantial evidence must stand unless, of course, it is pointed out that some prejudicial error of law has been committed by the trial court.

Insofar as the admission of Exhibit A is concerned, any error, if error there was, must be deemed harmless. As respondent's brief points out, Virgil L. Fore, who had been convicted of forgery, testified in detail as to how, when and where the forged checks were made, which testimony is uncontradicted; there is, therefore, no serious question as to whether the checks were actually forged. The real questions at issue were, rather, whether the bank was free from fault in cashing such checks, and as to the plaintiff's alleged contributory negligence in reference to the same matter. These questions would still have remained even if the specimens showing Fore's ability to forge Crow's name, had not been admitted. Moreover, as respondent mentions, the appellant made full and complete use of the specimens, and examined several witnesses upon the question whether checks bearing such signatures would be approved for payment.

The record discloses much evidence introduced by both parties, bearing directly and indirectly upon banking procedures in general, and the alleged negligence of both the

plaintiff and defendant in this particular case. The appellant's contention that the evidence shows "conclusively" that plaintiff's own negligence was the cause of the loss is not borne out by the record.

There was certainly substantial evidence and legitimate inferences to be drawn from the evidence, in support of the jury's verdict. Doubtless, the record reveals evidence from which a contrary conclusion might have been drawn, but the determination of this question was exactly that for which the jury was empanelled. Such being the situation, the verdict must stand. There was, for example, evidence, which, if believed, would indicate that Fore's nefarious activities were so covered up that any ordinary inspection would fail to disclose the situation or furnish any reason for the employer to become suspicious. There was likewise evidence calling in question the bank's system of bookkeeping and safeguards against the paying of forged checks. All this undoubtedly presented questions of fact for the jury's determination.

No reversible error is presented in respect to the trial court's instructions to the jury. In the case of some of defendant's requested instructions, these sought to take from the jury questions of fact hereinbefore discussed, and were properly refused. Appellant's further contention that certain instructions given, unduly emphasized the matter of defendant's negligence is not borne out by the record. Nor does the record disclose any errors of a prejudicial nature.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied January 23, 1950, and appellant's petition for a hearing by the Supreme Court was denied February 27, 1950. Carter, J., and Schauer, J., voted for a hearing.